**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MD AUTO GROUP, LLC dba I-90 NISSAN,** | **CASE NO. 1:20-CV-002248** |
| Plaintiff, | **JUDGE PAMELA A. BARKER** |
| -vs- | |
| **NISSAN NORTH AMERICA, INC.,** | **ORDER** |
| Defendant. | |

This matter comes before the Court upon Plaintiff MD Auto Group, LLC's Motion to Remand this matter back to the Court of Common Pleas of Lorain County, Ohio. (Doc. No. 6.) Defendant Nissan North America, Inc. filed an Opposition to Plaintiff's Motion to Remand. (Doc. No. 7.) Plaintiff did not file a Reply. For the reasons set forth below, Plaintiff's Motion to Remand is denied.

**I.     Background**

This matter stems from a dispute between Plaintiff MD Auto Group, LLC, dba I-90 Nissan ("I-90"), a car dealership and franchisee, and Defendant Nissan North America, Inc. ("NNA"), a vehicle manufacturer and franchisor, over NNA's internal audit of I-90's warranty service repair practices. (Doc. No. 1-1, ¶¶ 1-4, 14.)

I-90 is a car dealership in Sheffield Village, Ohio that sells and services NNA vehicles. (*Id.* at ¶ 3.) I-90 completes service repairs on vehicles covered under NNA warranties. (*Id.* at ¶ 10.) On January 31, 2020, NNA informed I-90 that it had audited I-90's warranty service repair practices. (*Id.* at ¶ 14.) NNA concluded that I-90 failed to comply with various NNA repair requirements with respect to certain repairs that NNA had already approved and paid. (*Id.* at ¶ 14.) NNA requested that I-90 repay NNA for certain repairs that NNA believed did not comply with its internal warranty repair

standards. (*Id.*) To that end, NNA requested that I-90 pay NNA a "chargeback"—or refund—of $76,664.92. (*Id.*)

On February 7, 2020, I-90 appealed NNA's audit findings. (*Id.* at ¶ 16.) In a letter dated June 3, 2020, NNA denied I-90's appeal, but also offered to reduce the amount of the chargeback to $54,309.77 in hopes of settling the dispute. (Doc. No. 7-2.) NNA requested that I-90 notify it whether I-90 accepted the reduced chargeback offer by June 19, 2020. (*Id.*)

On June 18, 2020, I-90 again appealed NNA's audit findings and countered that the chargeback amount should total only $2,990.94. (Doc. No. 1-1, ¶ 19.) On September 2, 2020, NNA again rejected I-90's appeal and offered, again, to reduce the chargeback to $54,309.77. (*Id.* at ¶ 21.) NNA informed I-90 that this chargeback reduction offer only stood until September 13, 2020. (*Id.*)

On September 11, 2020, I-90 commenced this action against NNA in the Cuyahoga County Court of Common Pleas ("CCCCP"). (*Id.*) In its Complaint, I-90 brings five claims against NNA: (1) Count One, Breach of the Ohio Dealer Act; (2) Count Two, Declaratory Judgment; (3) Count Three, Injunctive Relief; (4) Count Four, Breach of Contract and Implied Covenants; and (5) Count Five, Breach of Fiduciary Duty. (*Id.* at ¶¶ 25-67.) I-90 seeks various types of relief. With respect to Count One, I-90 seeks the following: to "maintain the status quo and keep the service claims actually performed and paid by NNA," reimbursement of its costs and fees associated with bringing this action as provided under Ohio Rev. C. § 4517.65(A), and "double all compensatory damages (i.e., proposed charge back amount of $54,309.77)." (*Id.* at ¶¶ 39, 40.) With respect to Count Two, I-90 seeks a declaration setting forth certain of its rights related to the chargeback. (*Id.* at ¶ 43.) With respect to Count Three, I-90 seeks an injunction to "main[tain] the status quo" and prevent NNA from debiting I-90's account $54,309.77 for the chargeback. (*Id.* at ¶¶ 49-51.) With respect to Count Four, NNA

seeks an unspecified amount of actual and consequential damages. (*Id.* at ¶ 62.) With respect to Count Five, NNA seeks unspecified damages "in an amount to be determined at trial of this matter, including exemplary damages and attorneys' fees." (*Id.* at ¶ 67.)

On September 15, 2020, Judge Nancy Fuerst determined that venue was properly situated in Lorain County and *sua sponte* transferred the matter to the Lorain County Court of Common Pleas ("LCCCP"). (Doc. No. 6-1, PageID# 54.) That same day, the CCCCP mailed a copy of the transfer order to NNA. (*Id.* at PageID# 55.) The CCCCP docket reflects that it was delivered to NNA on September 23, 2020. (*Id.*)

According to NNA, it was served with I-90's Complaint and Summons from the CCCCP on September 16, 2020, one day after Judge Fuerst ordered the matter transferred to the LCCCP. (Doc. No. 7, PageID# 58.) According to NNA, I-90 did not serve a copy of the September 15, 2020 transfer order on NNA with the Complaint and Summons. (*Id.*)

The LCCCP received the matter on September 23, 2020. (*Id.* at PageID# 56.) That same day, the LCCCP sent NNA notice of the transfer via certified mail. (*Id.*) The LCCCP docket reflects that NNA received and signed for the notice of transfer on September 29, 2020. (*Id.*) On October 6, 2020, NNA filed its Notice of Removal to this Court. (Doc. No. 1.) That same day, NNA notified the CCCCP that it removed the matter. (Doc. No. 6-1, PageID# 55; Doc. No. 7, PageID# 58.)

On October 29, 2020, I-90 filed the instant Motion to Remand the case back to the LCCCP. (Doc. No. 6.) On October 30, 2020, NNA filed another Notice of Filing, this time notifying the LCCCP that NNA had removed the case to this Court. (Doc. No. 7-5.) On November 3, 2020, the LCCCP docket was updated to reflect that NNA "timely filed a notice of removal" to this Court, in accordance with 28 U.S.C. § 1446. (Doc. No. 7-6.)

3

On November 12, 2020, NNA filed an Opposition to I-90's Motion to Remand. (Doc. No. 7.) I-90 did not file a reply in support of its Motion. Thus, the matter is ripe and ready for resolution.

## II.     Standard of Review

A defendant may remove to federal court only state court actions that originally could have been filed in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996). To remove a case based on diversity, the diverse defendant must demonstrate that all prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied. Under § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.

The court must give "due regard" to the power reserved to the states under the Constitution to provide for the determination of controversies in the state courts. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Accordingly, removal statutes must be construed strictly to promote comity and preserve jurisdictional boundaries between state and federal courts. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "[A]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). The defendant seeking removal bears the burden of proving the court's jurisdiction. *See Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). In determining whether removal was proper, a trial court "has wide discretion to allow affidavits,

documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**III. Analysis**

I-90 argues that this matter should be remanded for two reasons: first, that NNA's removal was defective because it failed to attach certain orders to its removal and to file a notice of removal with the correct state court; and, second, that this Court lacks jurisdiction over this matter because the amount in controversy is less than $75,000. (Doc. No. 6.) NNA contends that it cured any procedural defects with its subsequent filings in this Court and in state court, and also that the amount in controversy is satisfied. (Doc. No. 7.)

**A. Defective Removal**

First, I-90 asserts that this matter should be remanded to the LCCCP because NNA failed to attach two orders to its Notice of Removal in this court: (1) Judge Fuerst's September 15, 2020 transfer order, and (2) the September 23, 2020 notice from the LCCCP confirming the matter was transferred from Cuyahoga to Lorain County. (Doc. No. 6, PageID# 41-42.)

NNA responds that a failure to attach orders to a notice of removal is a procedural error that can be cured with a supplemental filing. (Doc. No. 7, PageID# 59-60.) NNA argues that it cured this error when it appended the September 15, 2020 transfer order, its "Notice of Filing of Notice of Removal" to the LCCCP, and a copy of the LCCCP docket to its Opposition. (Doc Nos. 7-4 – 7-6.) The Court finds NNA's argument well-taken.

A notice of removal shall be filed within 30 days of receipt by the defendant, whether through service or otherwise. 28 U.S.C. § 1446(b). The notice of removal must be accompanied by "a copy

of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a).

"The Sixth Circuit permits defendants to cure procedural defects in notices of removal so long as the removal was timely and did not violate the unanimity requirements in cases with multiple defendants, and federal-court jurisdiction in fact existed prior to the expiration of the time period for removal." *Hankins v. Bosch*, No. 3:18-cv-2191, 2019 WL 1382243, at *1 (N.D. Ohio Mar. 27, 2019). "A court may deny a plaintiff's motion to remand where the defendants only 'committed a technical error . . . that could easily be cured . . . .'" *Id.* (quoting *Schliewe v. Toro*, 138 F. App'x 715, 720 (6th Cir. 2005)). A failure to conform to the removal statute's procedural rules "is not a jurisdictional defect and is curable by amendment even after the thirty-day window for filing the notice has expired." *Wright v. Sand Canyon Corp.*, No. 5:10-cv-2188, 2011 WL 1792815, at *2 (N.D. Ohio May 11, 2011) (citing *Klein v. Manor Healthcare Corp.*, Nos. 92-4328, 92-4347, 1994 WL 91786, at *4 (6th Cir. Mar. 22, 1994) ("In recent years, this court has expressed a reluctance to interpret statutory removal provisions in a grudging and rigid manner, preferring instead to read them in a light [. . .] more consonant with a modern understanding of pleading practices.")).

The Court finds that NNA properly cured this procedural defect when it filed Judge Fuerst's September 15, 2020 transfer order and the LCCCP docket, indicating that the transfer was completed on September 21, 2020. (Doc. Nos. 7-4, 7-6.) This is not the type of fatal flaw that warrants remand. *See, e.g., Hankins*, 2019 WL 1382243, at *1.

Next, I-90 contends that remand is also warranted here because NNA failed to provide prompt notice of removal to the LCCCP and instead filed its October 6, 2020 notice of removal "with the clerk for the inactive and closed matter in Cuyahoga County Common Pleas Court." (Doc. No. 6,

6

PageID# 43.)  NNA argues that it cured this defect when it filed a notice of removal with the LCCCP on October 30, 2020.  (Doc. No. 7, PageID# 59.)  Here, too, the Court finds that NNA has the better argument.

According to 28 U.S.C. § 1446(b)(1), a defendant has 30 days from the date that it received the Complaint and Summons to file a notice of removal in this Court.  According to 28 U.S.C. § 1446(d), "[p]romptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."  As discussed, *supra*, the Sixth Circuit permits defendants to cure procedural defect in notices of removal, so long as removal was timely and federal jurisdiction existed at the time of removal.  *See Hankins*, 2019 WL 1382243, at *1.  Defendants may even cure procedural defects after the initial 30-day window for removal has closed.  *See Wright*, 2011 WL 1792815, at *2.

To support its argument that its initial failure to file a notice of removal to the LCCCP is not fatal, NNA directs the Court's attention to *Peterson v. BMI Refractories*, an Eleventh Circuit case with a far more complicated procedural history than the instant matter.  In *Peterson*, the plaintiff initially filed a case in Jefferson County, Alabama.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1388.  The defendant was properly served in Jefferson County on August 3, 1995.  *Id.*  One week later, on August 10, 1995, the Jefferson County court transferred the matter to Montgomery County, Alabama.  *Id.*  For reasons that are unclear, the defendant never learned of the transfer.  *Id.*  Instead, the defendant filed a notice of removal to the Northern District of Alabama, the district that embraces Jefferson County, but not Montgomery County, which is situated in the Middle District.  *Id.*  Although

the defendant only ever filed actual notice of removal in Jefferson County, and *never* filed notice of removal in Montgomery County, the Eleventh Circuit concluded that, "[m]ore importantly, failure of notice to the state court is a procedural defect that does not defeat federal jurisdiction, even though a federal court might be justified in granting a timely motion to remand under 28 U.S.C. § 1447 on the grounds of such a defect." *Id.* at 1395. To support its conclusion, the court cited to *Covington v. Indemnity Insurance of North America*, which held "that [the] district court acquired jurisdiction in a removed case, even though the notice of removal was defective in that a 'copy of all process, pleadings, and orders' was not filed with the removal petition." *Id.* (citing *Covington v. Indem. Ins. Co. of N. Am.*, 251 F.2d 930, 932 (5th Cir. 1958)). The Eleventh Circuit concluded that the defendant's failure to file written notice of removal with the Montgomery County court did not defeat the district court's removal jurisdiction.

The Court is persuaded that NNA's defective filing of notice to Cuyahoga, rather than Lorain, County does not defeat the Court's removal jurisdiction, as NNA ultimately remedied the error. NNA was served with the Complaint and Summons on September 16, 2020. (Doc. No. 7, PageID# 58.) NNA timely filed its Notice of Removal in this Court, and also in the Cuyahoga County Court of Common Pleas 20 days later, on October 6, 2020. (Doc. No. 1; *see also* Doc. No. 7, PageID# 58.) I-90 filed its Motion to Remand on October 29, 2020, and NNA, alerted to its error, filed a "Notice of Filing of Notice of Removal" with the LCCCP on October 30, 2020, or 24 days after it initially removed the case to this Court. (Doc. No. 7-5.) No doubt, it is puzzling why NNA proceeded to file its Notice of Removal in the CCCCP on October 6, 2020, when the LCCCP docket reflects that NNA received notice of the transfer to Lorain County on September 29, 2020. (Doc. No. 7-6.) However, once I-90 filed its Motion to Remand on October 29, 2020, NNA filed its "Notice of Filing of Notice

8

of Remand" to the LCCCP the very next day, curing its defect within 24 days of removal to this Court.

Moreover, the Court notes that the LCCCP took no substantive action in this case between when the court received the case on September 23, 2020, and when NNA filed its Notice of Filing of Notice of Remand on October 30, 2020.  (*See* Doc. No. 7-6.)  Further, I-90 was aware that NNA filed a Notice of Removal to this Court on October 6, 2020, as it filed its Motion to Remand in this Court on October 29, 2020.  (Doc. No. 6.)  Thus, I-90 has not been prejudiced by NNA's defect.  *See, e.g., Young v. Community Assessment & Treatment Servs., Inc.*, No. 1:07-cv-1797, 2007 WL 3340033, at *6 (N.D. Ohio Nov. 6, 2007) (concluding that the defendant's failure to attach the state court summons did not unduly prejudice the state court or plaintiff, as the defect was easily remedied).

Accordingly, because the Court has subject-matter jurisdiction over this matter, *see infra*, the Court concludes that NNA's initial defects in its Notice of Removal do not require remanding this matter back to the state court.

### B.  Amount in Controversy

Both parties concede diversity of citizenship.  However, the parties contest whether NNA has satisfied the amount-in-controversy requirement to obtain diversity jurisdiction.  Specifically, I-90 argues that the true amount in controversy is only $54,309.77, the amount for which NNA twice offered to settle with I-90.  (Doc. No. 6, PageID# 45.)  I-90 further argues that the Court may only consider attorney fees accrued as of the time of removal (i.e., $5,950.00), rather than "speculate" about the amount of attorney fees that may accrue in this matter in the future.  (*Id.* at PageID# 47-48.)  With respect to its claims for declaratory judgment and injunctive relief, I-90 argues that the Court should measure the "value of the object in litigation" to be $54,309.77, the amount of both of

9

NNA's settlement offers to I-90, and not $76,664.92. (*Id.* at PageID# 48.) With respect to its claims for breach of contract and breach of fiduciary duty, I-90 argues that NNA's initial audit amount of $76,664.92 "was twice revised downward to the amount of $54,309.77 after appeals by I-90." (*Id.*)

In its Opposition, NNA argues that the amount in controversy requirement is easily satisfied because the proposed chargeback at issue is $76,664.92. (Doc. No. 7, PageID# 60.) NNA argues that it twice offered to reduce the chargeback amount, but that both of those offers expired. (*Id.*) Therefore, the chargeback amount that I-90 seeks to avoid through this litigation is $76,664.92. (*Id.*) Moreover, NNA argues, I-90 also seeks attorney fees, costs, and to double its damages under the Ohio Dealer Act, which, when added together with the chargeback at issue, far exceed $75,000. (*Id.* at PageID# 61.)

The Court finds that NNA has established the requisite amount in controversy. To satisfy its burden, NNA must prove by a preponderance of the evidence that the complete diversity and amount in controversy requirements are met. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (abrogated on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)). Normally, the sum claimed by the plaintiff controls, but "where plaintiff[ ] seek[s] to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement, the defendant satisfies its burden when it proves that the amount in controversy more likely than not exceeds $75,000[.00.]" *Id.* at 822.

"In an action for injunction, 'it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Ojala Props., LLC v. Clear Channel Outdoor, Inc.*, No. 1:13-cv-1226, 2013 WL 4501020, at *2 (N.D. Ohio Aug. 21, 2013) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). In an action for a

10

declaratory judgment, the same standard applies. *Northup Properties, Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009) (citing *Hunt*, 432 U.S. at 347). In applying this principle, the Sixth Circuit "has said that [w]here a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quotations omitted).

In Counts Two and Three, I-90 seeks a declaratory judgment that declares, among other things, NNA's attempt to institute an "audit and charge back for paid service claims beyond one (1) year (without alleging fraud or lacking material documentation) violates the Ohio Dealer Act," as well as an injunction to maintain the "status quo" and prevent NNA from debiting I-90's account for the chargeback. (Doc. No. 1-1, ¶¶ 43, 50.) Thus, the "object of the litigation" is NNA's proposed chargeback for the allegedly improper repairs. The "value" of the chargeback is $76,664.92, the amount that NNA originally sought from I-90 on January 31, 2020. (*Id.* at ¶ 15.) NNA's audit is the root of this litigation: NNA calculated that it allegedly overpaid I-90 $76,664.92 for improper warranty service repairs. (*Id.*) I-90 seeks to maintain the "status quo" through its declaratory judgment and injunctive relief claims, meaning that it seeks to retain the value of the allegedly improper repairs. (*Id.* at ¶¶ 49, 50, 51.) According to the January 31, 2020 letter, the value of those allegedly improper repairs is $76,664.92. (*Id.* at ¶ 15.) NNA's offers to settle the dispute with I-90 for $54,309.77 do not alter NNA's original calculation that it believes I-90 owes it $76,664.92 for allegedly improper repairs. (*Id.*) I-90 offers no support for its argument that NNA's expired settlement offers represent the actual value of the object of the litigation, i.e. the allegedly improper service repairs.

Moreover, in Count One, I-90 claims that, under Ohio Rev. C. § 4517 *et seq.*, it is "entitled to maintain the status quo and keep the service claims actually performed and paid for by NNA." (Doc. No. 1-1, ¶ 39.) As discussed above, according to I-90's Complaint, as well as NNA's appeal denial letters, the value of these paid service claims is $76,664.92. (*Id.* at ¶ 15; *see also* Doc. Nos. 7-2, 7-3.) Therefore, the "status quo" that I-90 seeks to maintain is one in which it retains $76,664.92 in paid service claims. Accordingly, the Court is satisfied that it has subject matter jurisdiction based on diversity under 28 U.S.C. § 1332.

## IV. Conclusion

For the reasons stated above, Plaintiff's Motion to Remand (Doc. No. 6) is DENIED.

**IT IS SO ORDERED.**

Date: December 22, 2020

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE